**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GALINA EDVARDOUNA TUPIKOVSKAYA, | No. 05-75501 |
| Petitioner, | Agency No. A095-200-586 |
| v. | MEMORANDUM [*] |
| ERIC H. HOLDER Jr., Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 1, 2010
Pasadena, California

Before: B. FLETCHER, PREGERSON and GRABER, Circuit Judges.

Galina Edvardouna Tupikovskaya ("Tupikovskaya"), a native and citizen of

Uzbekistan, petitions for review of the Board of Immigration Appeals' ("BIA")

order dismissing her appeal from an immigration judge's ("IJ") decision denying

her application for asylum, withholding of removal, and relief under the

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We grant the petition and remand to the BIA.

The IJ denied petitioner's applications for relief because he found Tupikovskaya not credible. The BIA affirmed the IJ's decision without opinion under 8 C.F.R. § 1003.1(e)(4). Accordingly, we review the IJ's decision. *See Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir. 2004). We review credibility determinations for substantial evidence. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009).

## I. Credibility

We recite the facts only as needed to explain our decision. The IJ based his adverse credibility finding on his misstatements of the record, speculation, failure to provide an opportunity to explain discrepancies or to consider those explanations, an unsubstantiated demeanor finding, and an erroneous requirement of corroborative evidence. We conclude that substantial evidence does not support the IJ's adverse credibility finding.

### a. The IJ misstated the record

In several instances, the IJ misstated the record, making factual errors. First, the IJ erroneously concluded that Tupikovskaya did not know that BIRLIK's activities were restricted. Tupikovskaya repeatedly demonstrated that she knew

that BIRLIK was an illegal organization through her testimony, asylum application, and asylum declaration.

Second, the IJ erroneously found that Tupikovskaya failed to mention on direct examination that her activities for BIRLIK's women's section were secret. Tupikovskaya emphasized that her participation in the inspections of health conditions for working women was "illegal." Tupikovskaya maintained throughout her testimony, including on direct examination and in her asylum declaration, that she conducted research under the auspices of a non-profit organization named "Counterpart Consortium." When conducting her research, Tupikovskaya provided a document with a seal from Counterpart Consortium, although she was really working for BIRLIK. Although Tupikovskaya was working for BIRLIK, she had to do so under the pretense of working for Counterpart Consortium, the implication being that Tupikovskaya's work was secret.

Third, the IJ asked Tupikovskaya what steps she had taken to help her husband. The record reveals that in her first response to the IJ's question Tupikovskaya explained that she went to the Israeli embassy to seek asylum for herself *and* for her husband. The IJ misstated the record, then, when he found that Tupikovskaya had initially answered his question with regard to only herself by saying that she sought to immigrate to Israel.

The IJ's adverse credibility finding cannot stand based on these three misstatements of record.

**b. The IJ engaged in speculation and conjecture**

Under *Shah v. INS*, "[s]peculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence." 220 F.3d 1062, 1071 (9th Cir. 2000). In this case, the IJ engaged in speculation and conjecture on at least two occasions.

First, the IJ engaged in speculation and conjecture when he found Tupikovskaya's membership in BIRLIK suspect because she claimed that BIRLIK sent her to work in Moscow. Nothing in the record supports the IJ's belief that BIRLIK, as an underground organization, would not be able to send its members abroad. In fact, the record supports the proposition that BIRLIK members were active outside Uzbekistan during the 1990s. The 2002 U.S. State Department Human Rights Country Report for Uzbekistan states that an exit visa was not required for Uzbeki nationals to travel from Uzbekistan to most countries of the former Soviet Union.

Second, the IJ engaged in speculation and conjecture when he found that Tupikovskaya and her son's "close relationship" meant that Tupikovskaya would have informed her son of her BIRLIK activities. The IJ erred in speculating as to what a mother may or may not share with her son, particularly when information-

sharing could be dangerous. *See, e.g., Kumar v. Gonzales*, 444 F.3d 1043, 1052 (9th Cir. 2006) ("IJ's adverse credibility determination, insofar as it was based upon his opinion regarding what brothers from India who had grown up and fled India together might or might not do, was purely conjecture.").

As such, the IJ's findings, based on speculation and conjecture, do not provide substantial evidence to support the IJ's adverse credibility finding.

### c. The IJ failed to provide Tupikovskaya with a reasonable opportunity to address inconsistencies

A petitioner must be provided with a "reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum." *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999). In this case, the IJ failed, on at least two occasions, to provide Tupikovskaya with a reasonable opportunity to explain any perceived inconsistencies.

First, the IJ based his adverse credibility finding in part on Tupikovskaya's failure to seek asylum from the U.S. Embassy in Moscow, yet the IJ did not give Tupikovskaya an opportunity to explain her failure to do so.

Second, the IJ erred in basing his adverse credibility finding in part on his perceived discrepancy between the description Tupikovskaya gave in her asylum application of the clothing she wore to her U.S. embassy interview in Tashkent, Uzbekistan, and the description of that clothing that Tupikovskaya gave at her

hearing. The only inconsistency between Tupikovskaya's two descriptions of her attire was that Tupikovskaya's asylum declaration listed that she wore dark glasses, while she did not mention wearing glasses in court.[1] The IJ did not, however, question Tupikovskaya in court about whether she was wearing dark glasses or anything else at her U.S. Embassy interview in Tashkent. Thus, the IJ erred in basing his adverse credibility finding on this perceived discrepancy because Tupikovskaya had no opportunity to explain any potential inconsistency.[2]

### d. The IJ failed to consider and address Tupikovskaya's explanations for several discrepancies

The IJ must consider and address a petitioner's explanation for a discrepancy. *See, e.g., Soto-Olarte*, 555 F.3d at 1091 ("[IJ's] lack of consideration given to [petitioner's] proffered explanation was error and prevent[ed] the underlying inconsistency from serving as substantial evidence."). Here, the IJ failed to address Tupikovskaya's plausible explanations for discrepancies in her case on five occasions and erroneously rejected her explanation on one occasion.

---

[1] The difference in Tupikovskaya's description between a "black kerchief" and a "dark shawl" is possibly a minor inconsistency and possibly no inconsistency at all due to a discrepancy in translation. Therefore it cannot support an adverse credibility finding. *See Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003).

[2] Also, the inconsistency likely does not go to the heart of Tupikovskaya's asylum claim. *See Singh v. Ashcroft,* 301 F.3d 1109, 1111-12 (9th Cir. 2002).

First, the IJ made his adverse credibility finding in part on Tupikovskaya's lack of knowledge regarding the specific date that her political organization, BIRLIK, was banned. Tupikovskaya explained that all opposition organizations in Uzbekistan were banned in 1993, and that she was unsure of BIRLIK's exact ban date because she joined after BIRLIK was already underground. None of the country conditions materials, including the 2002 Country Report, found in the record give a definitive date for when BIRLIK was banned. The IJ's expectation that Tupikovskaya would know the specific date BIRLIK was banned is likely unreasonable and he erred in failing to address Tupikovskaya's explanation for her lack of knowledge of BIRLIK's specific ban date.

Second, the IJ based his adverse credibility finding in part on Tupikovskaya's failure to submit the published report containing the data she collected on BIRLIK's behalf. Tupikovskaya explained that she did not write or publish the report, but only compiled the research and emphasized that she did not receive a copy of, or even know the name or publication date of, the report. Tupikovskaya explained that she learned her name was associated with the report because the Uzbek security service, when in the process of arresting, detaining, and beating her, told her that they knew her name because she stated her name to enter the factories where she gathered data for the report. The IJ erred in failing to

address Tupikovskaya's explanation for her failure to submit the report as evidence.

Third, the IJ based his adverse credibility finding on Tupikovskaya's failure to make additional efforts to help her incarcerated husband. Tupikovskaya explained that she feared for her own life and was told by members of BIRLIK to go into hiding, not to call anybody, and not to leave the house. The record supports this explanation. Further, Tupikovskaya explained that no communication was allowed with political prisoners, so she relied on reports from BIRLIK members regarding her husband's location. The IJ erred in failing to address Tupikovskaya's explanation for her failure to make additional efforts to help her husband.

Fourth, the IJ based his adverse credibility finding in part on the fact that Tupikovskaya's son, Yevgenii, did not know the date that his stepfather, Ilia, had joined BIRLIK. Ilia had joined BIRLIK before he married Yevgenii's mother. Yevgenii explained that he was not close to Ilia and did not talk to him about BIRLIK. Further, Yevgenii and Ilia shared a home for less than a year, approximately six months. The IJ did not address these facts, which adequately explained why Yevgenii did not know when Ilia joined BIRLIK.

Fifth, the IJ erred in basing his adverse credibility finding on his finding that Yevgenii attributed Tupikovskaya's 1998 arrest to Tupikovskaya or Ilia having

made a speech on the radio in January 2000. Yevgenii began his testimony by explaining that he only had a "little bit" of knowledge about his mother's activities. Yevgenii had no firsthand knowledge of either of his mother's arrests because he had moved to the U.S. in August 1998, before either of Tupikovskaya's arrests occurred. He admitted that he did not know the date of his mother's arrest and that he thought her arrest was "probably" because of her activities in Moscow. Further, the government's questioning of Yevgenii regarding Tupikovskaya's arrests was confusing. The government attorney asked Yevgenii if he knew why his mother had been arrested, without specifying to which arrest he referred - the arrest in Uzbekistan in 1998 or the arrest in Moscow in 2000. Thus the IJ erred in finding that Yevgenii's testimony undermined Tupikovskaya's claim and in failing to address Yevgenii's explanation for his confusion.

Sixth, and finally, the IJ based his adverse credibility finding in part on the inconsistency regarding Tupikovskaya's employment history. In the section for the name and address of the employer, Tupikovskaya's asylum application listed her occupation between 1990 and 1999 as an engineer for a company attached to the Uzbek Ministry of Agriculture. When the IJ questioned Tupikovskaya about this job, she immediately answered that she was "considered to be on the list there." Tupikovskaya testified that according to her documents, she was employed, but in reality she was not employed. Tupikovskaya explained that she

did not actually go to work, but that she was kept on the payroll so that the officials at the company could keep her paycheck. Rather than working, Tupikovskaya stated that she stayed at home caring for her son and worked on BIRLIK assignments, which she also referred to as the "opposition organization," after she joined BIRLIK in May 1997.

The IJ did not believe Tupikovskaya's explanation that she was merely "on the books" and stated that Tupikovskaya sought to downplay her role as an engineer affiliated with the government because the job would undermine her claim of persecution for her opposition activities. Even if Tupikovskaya had been employed by a government affiliated company, the IJ's conclusion that she could not also be a member of BIRLIK is speculative and unsupported by any record evidence. The IJ ignored testimony from Tupikovskaya's son who explained that Tupikovskaya worked when she "was younger," but was then a housewife doing "basic stuff" during the 1990s. When the IJ asked Tupikovskaya what she was doing during the nine year period at issue, Tupikovskaya replied that she "[w]as staying at home; was busy with assignments from BIRLIK." This statement is consistent with Tupikovskaya's previous testimony that she joined BIRLIK in May 1997. From 1990 to May 1997, Tupikovskaya was "staying at home," which she later specified meant that she was caring for her son; after May 1997, she worked on BIRLIK assignments. The IJ also ignored Tupikovskaya's testimony that she

and her husband were both laid off after the fall of the Soviet Union. Therefore, the IJ erred in not accepting Tupikovskaya's plausible explanation for why she listed her employer on her asylum application.

### e. The IJ did not specifically and cogently explain his finding on Tupikovskaya's demeanor

Special deference is accorded to credibility determinations based on an applicant's demeanor. *Singh-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999). An IJ's demeanor-based negative credibility finding must specifically and cogently refer to the non-credible aspects of the applicant's demeanor. *See Arulampalam v. Ashcroft*, 353 F.3d 679, 686 (9th Cir. 2003).

In this case, the IJ observed that Tupikovskaya "displayed virtually no emotion" when testifying about her husband's sentence and that she "seemed almost indifferent" to his fate. The IJ failed to specifically explain which aspects of Tupikovskaya's demeanor led him to draw these conclusions. The IJ did not specifically and cogently refer to the non-credible aspects of Tupikovskaya's demeanor, as required under *Arulampalam*, 353 F.3d at 686.

### f. The IJ erred in requiring corroborative evidence

Where an IJ's adverse credibility finding is unsupported by substantial evidence, no corroborative evidence is required. *See Kataria v. INS*, 232 F.3d 1107, 1113 (9th Cir. 2000) ("the BIA may not require independent corroborating

evidence from an asylum applicant who testifies credibly. . . .").[3] As discussed above, substantial evidence does not support the IJ's adverse credibility finding, so Tupikovskaya should be deemed credible. Because corroborative evidence is not required where a petitioner has testified credibly, the IJ erred in finding Tupikovskaya not credible because she failed to submit the published BIRLIK report on women's health.

## IV. Judicial Bias

In her opening brief Tupikovskaya claimed that the IJ was biased and that his adverse credibility finding should be overturned. The government claimed that Tupikovskaya failed to exhaust her administrative remedies with respect to the bias claim because she did not raise it in front of the BIA. At oral argument Tupikovskaya all but abandoned her judicial bias claim. We need not address this issue because we vacate the IJ's adverse credibility finding and remand Tupikovskaya's case to the BIA.

## V. Conclusion

Because the IJ's adverse credibility finding was not supported by substantial evidence, we GRANT the petition and REMAND to the BIA for further

---

[3] Tupikovskaya filed her application for relief on November 26, 2001, prior to May 11, 2005, the effective date of the REAL ID Act. *See Sinha v. Holder*, 564 F.3d 1015, 1021 n.3 (9th Cir. 2009) (applying pre-REAL ID Act standards because petitioner's asylum application was filed before May 11, 2005).

proceedings to determine whether, accepting Tupikovskaya's testimony as credible, she is eligible for relief.  *See, e.g., Singh v. Gonzales*, 439 F.3d 1100, 1113 (9th Cir.  2006).

**PETITION GRANTED AND REMANDED**

<u>Tupikovskaya v. Holder</u>, No. 05-75501

GRABER, Circuit Judge, dissenting:

I respectfully dissent. Substantial evidence supported the immigration judge's ("IJ") adverse credibility finding. At a minimum, three points on which the IJ relied support that finding.

First, there were discrepancies between Petitioner's testimony and that of her son. Petitioner's son testified that he was "close" to Petitioner and that they "share[d] details about [their] lives." Petitioner's son testified that he did not learn of Petitioner's asserted membership in BIRLIK until 1999, despite Petitioner's claim to have joined BIRLIK in 1997. In addition, Petitioner testified that she was arrested once in Uzbekistan because of her research and arrested a second time in Moscow because of her speech at a political rally there. Petitioner's son testified that Petitioner "told [him] . . . what happened" regarding her arrest in Uzbekistan with the exception of "dates."But Petitioner's son then testified that Petitioner had been arrested only once, in Uzbekistan, probably because of her speech in Moscow. The IJ's questions were not confusing and do not account for these discrepancies.

Second, the IJ's statement that Petitioner showed "virtually no emotion when testifying about" her husband's alleged imprisonment for his BIRLIK activities constituted a specific and cogent reference to an aspect of Petitioner's

demeanor. See Arulampalam v. Ashcroft, 353 F.3d 679, 686 (9th Cir. 2003). Petitioner's explanation for her lack of emotion—that she was not emotionally committed to her husband—was inconsistent with the claim on her asylum application that Petitioner "lived in constant fear for the life and safety of [her] husband" after his arrest.

Third, the IJ relied on Petitioner's failure to provide a copy of the research results, as well as other documents, to corroborate her story. Because the IJ had valid reasons to doubt Petitioner's credibility, the IJ could properly consider Petitioner's failure to produce corroborating evidence. Unuakhaulu v. Gonzales, 416 F.3d 931, 938 (9th Cir. 2005). Petitioner testified that she had been told that the research results were published in England. Thus, the evidence does not compel a reasonable trier of fact to conclude that the research results were unavailable. 8 U.S.C. § 1252(b)(4); see also REAL ID Act of 2005, Pub. L. No. 109-13, div. B, § 101(h)(3), 119 Stat. 231, 305-06 (providing that the standard of review for availability of corroborating evidence applies to final removal orders regardless of the date on which they were issued).

The inconsistencies identified by the IJ go to the heart of Petitioner's claim that she had been persecuted or had a well-founded fear of future persecution in Uzbekistan for her association with BIRLIK. See Li v. Ashcroft, 378 F.3d 959, 962 (9th Cir. 2004). Accordingly, I would deny the petition.